**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sakhawat ULLAH, Jr., Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mary Katherine GOSHO–KIM, Defendant–Appellant.**

**Nos. 90–10370, 90–10390.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1992.

Decided Sept. 30, 1992.

**510**

William H. Callaway, Neis & Callaway, Tucson, Ariz., for defendant-appellant Sakhawat Ullah, Jr.

Peter Schey, Los Angeles, Cal., for defendant-appellant Mary Katherine Gosho–Kim.

Robert M. Miskell, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before: SCHROEDER, REINHARDT, and KLEINFELD, Circuit Judges.

REINHARDT, Circuit Judge:

Sakhawat Ullah and Mary Katherine Gosho–Kim appeal their convictions on counts of transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(B) and 18 U.S.C. § 2. Among other things, Ullah and Gosho–Kim contend that the district court improperly empaneled a fourteen-person jury and permitted it to deliver a nonunanimous guilty verdict. They are correct.[1]

During jury selection, the district court chose fourteen people—twelve jurors and two alternates—to serve as Ullah and Gosho–Kim's jury. In the course of the two-week trial, the attention of one of the alternate jurors began to flag, and she asked to be excused. The district court believed, perhaps correctly, that the problem with the alternate juror was caused by her realization that she would be unable to deliberate with the regular jurors and otherwise participate in the outcome of the trial. *See United States v. Olano*, 934 F.2d 1425, 1437–39 (9th Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 1935, 118 L.Ed.2d 542 (1992) (holding that alternate jurors cannot be present during or participate in jury deliberations).

The district court, *sua sponte*, proposed to remedy the alternate juror problem by permitting the two alternates to deliberate and vote with the regular jurors—in effect, creating a fourteen-person jury. The district court also suggested that the reconstituted fourteen-person jury be permitted to deliver a nonunanimous verdict as long as twelve of the fourteen jurors agreed on conviction or acquittal. The transcript reveals the following dialogue between the district court, the prosecutor, and the attorneys for Ullah and Gosho–Kim:

The Court: I have discussed this earlier with you, about all the alternates. I cannot make you stipulate to this, but if [an alternate juror] asks the question, that she legitimately should ask: "Am I going to have to listen to this, and pay attention, and then go home without participating?"

. . . .

My question to you is—and what I would recommend to you, in any case, is that we allow all of the jurors to deliberate, and—the way I would do it is to let them deliberate and to vote,

---

**1.** The other events complained of by Ullah and Gosho–Kim may not recur on retrial and do not include a claim that the evidence was insufficient to support their convictions: we therefore decline to reach those issues.

and the minute there are twelve votes for conviction, or acquittal, the jury can return a verdict. So one of those votes might be the alternate.

. . . .

Do you object to that?

Mr. Albert [AUSA]: I will do whatever the defense wants to do on this one.

The Court: Okay. Mr. Callaway [attorney for Ullah]?

Mr. Minker [attorney for Gosho–Kim]: Excuse me. I have no objection to the one juror being excused. We can take care of that.

The Court: Okay. The next problem—

Mr. Minker: I don't know about [Mr. Callaway].

Mr. Callaway: I have no objection.

Mr. Minker: So now we're down to 13.

The Court: We're down to 13.

Mr. Minker: Can we consult with our client, Judge?

The Court: For a split second.

. . . .

Mr. Minker: I don't have any problem with that, Judge. I've talked it over with my client—

The Court: Okay.

Mr. Callaway: We have no objection.

The Court: All right.

Mr. Minker: I think the record ought to show that we have consulted with our clients, and our clients have no objection.

The Court: All right.

. . . .

Mr. Albert: I don't think I want to have 14 jurors arguing on this case, Judge.

The Court: Why?

Mr. Albert: I don't know.

The Court: Well, then, you stand up and tell the two that they're excused.

Mr. Albert: I'll go along if the defense wants to go along with this one.

The Court: All right. How about 14?

. . . .

It's whatever you all want to do.

Mr. Callaway: That's fine. I don't have any problem with it.

Mr. Minker: I don't have any problem.

The Court: All right. Get the jury.

After the jury instructions were delivered, all fourteen jurors (the twelve regular jurors and the two alternates) retired to deliberate and determine Ullah and Gosho–Kim's fate. Several hours later, the jury returned with a verdict. Ten of the regular jurors and both of the alternate jurors voted to convict both defendants on six counts of transporting illegal aliens in the United States. Two of the regular jurors voted to acquit Ullah and Gosho–Kim on these charges. The vote thus was either 12–2 or 10–2 in favor of conviction, depending upon whether one includes the votes of the alternate jurors in the tally. Based upon that vote, the district court entered judgments of conviction against Ullah and Gosho–Kim on the six counts. Both defendants timely appealed.

The district court's failure to excuse the alternate jurors prior to the beginning of deliberations and its concomitant decision to include them in that process may run afoul of a number of rules governing the conduct of federal criminal proceedings. First, we could conclude that the district court's action permitting the alternate jurors to participate in the jury's deliberations violated Fed.R.Crim.P. 24(c), which states that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." *See Olano*, 934 F.2d at 1436–39. Even if Ullah and Gosho–Kim were allowed to waive that prohibition,[2] any such waiver must be made personally by the defendant (not his counsel), *see id.* at 1437. Ullah and Gosho–Kim made no such explicit waiver here.[3]

---

**2.** *Compare id.* at 1436 ("[R]ule 24(c) is phrased in unmistakably mandatory language and does not expressly provide for any waiver. . . .") *with id.* at 1437 (noting that courts have allowed Rule 24(c) to be waived under some circumstances).

**3.** Although Ullah and Gosho–Kim's attorneys stated that they had consulted with their clients and that Ullah and Gosho–Kim had no objection to the district court's suggestions, under *Olano*, such a waiver is invalid: criminal defendants must *personally* waive the requirements of Rule

The district court's decision to create, in effect, a fourteen-person jury also may have violated Fed.R.Crim.P. 23(b), which states that "[j]uries *shall be* of 12" persons and which permits waivers of that requirement solely if "in writing" and, even then, permits the creation of juries only with "*less* than 12" members. Fed.R.Crim.P. 23(b) (emphases added). The plain language of that rule is mandatory in nature and does not appear to allow even the consensual creation of a fourteen-person jury: that plain language generally is determinative. *See Price v. Commissioner*, 887 F.2d 959, 963 (9th Cir.1989); *see also United States v. Lopez*, 581 F.2d 1338, 1340–41 (9th Cir.1978) (noting that the drafters of the Federal Rules were well-aware of the possibility of waiver and chose to provide for it explicitly when they felt that it should be permitted). *But see United States v. Reed*, 790 F.2d 208, 210–11 (2nd Cir.), *cert. denied*, 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 393 (1986) (upholding conviction by thirteen-person jury agreed to by defendant as harmless error); *United States v. Stewart*, 700 F.2d 702, 704–05 (11th Cir.1983) (permitting defendant to stipulate to a thirteen-person jury).

■ We need not base our holding on a determination that the district court's actions violated Rule 24(c) or Rule 23(b), however, because we conclude that the decision to permit a *nonunanimous* verdict by the jury (regardless of how many members it contains) indisputably constitutes reversible error. Fed.R.Crim.P. 31(a) explicitly requires that "[t]he verdict shall be unanimous": that requirement cannot be waived. *See United States v. Lopez*, 581 F.2d 1338, 1340–42 (9th Cir.1978). We reversed the conviction in *Lopez* despite the fact that the defendant thrice stated that she wished to accept the nonunanimous verdict of the

jury, holding that the language, legislative history, and purposes of Rule 31 demonstrate that its requirements cannot be waived. *See id.* Then-Judge Kennedy, writing for the court in *Lopez*, proclaimed that "the requirement of a unanimous verdict is firmly established in the federal system". *Id.* at 1341. Our decision is in accord with those of almost every other circuit that has addressed that issue. *See, e.g., United States v. Pachay*, 711 F.2d 488, 490–93 (2nd Cir.1983) (holding that the requirement of Rule 31(a) that the jury verdict be unanimous cannot be waived after extensively reviewing the text, history, and purpose of that rule and noting that "[l]eading commentators are in agreement"); *United States v. Smedes*, 760 F.2d 109, 113 (6th Cir.1985) (holding that "the right to a unanimous verdict is so important that it is one of the few rights of a criminal defendant that cannot, under any circumstances, be waived" and quoting at length from *Lopez* ); *United States v. Morris*, 612 F.2d 483, 488–89 (10th Cir.1979) (noting that the requirement under Rule 31(a) that the verdict be unanimous cannot be waived); *United States v. Scalzitti*, 578 F.2d 507, 511–12 (3rd Cir.1978) (holding, based upon the text, history, and purpose of the rule, that the "unequivocal command" of Rule 31(a) cannot be waived); *see also United States v. Essex*, 734 F.2d 832, 841 (D.C.Cir.1984) (quoting approvingly from *Lopez* ); *see generally* Wayne F. Foster, Annotation, *Validity and Efficacy of Accused's Waiver of Unanimous Verdict*, 97 A.L.R.3d 1253 (1980 & 1991 Supp.).[4]

Despite the overwhelming and irrefutable authority to the contrary, the government urges us to adopt the singular view of the Eleventh Circuit, which permits the unanimity requirement of Rule 31(a) to be waived by a defendant "in exceptional cir-

24(c). *See id.* at 1437 (establishing and noting justifications for that requirement).

**4.** The government asserts that these cases only require a unanimous verdict from a jury comprised of *twelve* persons, and that the nonunanimous verdict here was permissible because it was from a *fourteen*-person jury in which twelve

persons agreed with the verdict. That argument is perilously close to frivolous. The language of Rule 31(a) does not differentiate between twelve- and fourteen-person juries, nor is a verdict legitimate whenever twelve persons agree on it despite the presence of one, two, six, eleven, or a thousand dissenting jurors.

cumstances". *See Sanchez v. United States*, 782 F.2d 928, 932–34 (11th Cir. 1986). We reject that invitation. The text, history, and purposes of Rule 31(a) clearly demonstrate that a criminal defendant cannot waive the requirement of jury unanimity under any circumstances.[5] The requirement that a jury in a federal prosecution determine, without dissent, that an individual is guilty of a criminal act before a defendant is punished for that crime benefits both the defendant and society as a whole. *See Lopez*, 581 F.2d at 1341–42. The desire of a defendant to eliminate that requirement does not obviate its necessity.[6]

■ The government finally contends that Ullah and Gosho–Kim cannot raise the "nonunanimous jury" issue on appeal because they did not object in the district court to the decision to permit a nonunanimous verdict. However, if, as here, a right or requirement cannot be waived, a party need not object to its deprivation in order to preserve the issue for appeal. Moreover, the issue is purely one of law and the record has been fully developed: it therefore can be raised for the first time on appeal. *See United States v. Reyes–Alvarado*, 963 F.2d 1184, 1189 (9th Cir.1992); *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990). Even if that were not the case, we review for "plain error"—"a highly prejudicial error affecting substantial rights," *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986)—even if no objection is made in the district court and the issue is raised for the first time on appeal. *See, e.g., Olano*, 934 F.2d at 1436 (reviewing the inclusion of an alternate in the jury deliberations for plain error despite the defendant's failure to object at trial). The injustice here is precisely such an error. For these reasons, Ullah and

**5.** Unlike criminal defendants in state courts, Ullah and Gosho–Kim's also have a federal *constitutional* right to a unanimous verdict by virtue of their presence in federal court. *See Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). As Justice Powell explained, "[a]t the time the Bill of Rights was adopted, unanimity had long been established as one of the attributes of a jury conviction at common law. It therefore seems to me, in accord both with history and precedent, that the Sixth Amendment requires a unanimous jury verdict to convict in a federal criminal trial." *See* 406 U.S. at 371, 92 S.Ct. at 1638 (footnotes omitted) (Powell, J., concurring in *Johnson* and concurring in the judgment in *Apodaca* ).

The historical foundation of the requirement that jury verdicts in federal criminal trials be unanimous indicates that a defendant cannot waive that component of a federal proceeding. Five justices of the Supreme Court have concurred in the view that unanimity is unalterably required in federal criminal prosecutions. *See id.* 406 U.S. at 369, 92 S.Ct. at 1637 ("In an unbroken line of cases reaching back into the late 1880's, the Justices of this Court have recognized, virtually without dissent, that unanimity is one of the *indispensable* features of federal jury trial.") (citations omitted) (emphasis added). Indeed, several circuits have held that a criminal defendant in federal court can waive *neither* the statutory *nor* the constitutional requirement of a unanimous jury verdict. *See, e.g., Smedes*, 760 F.2d at 111–13; *Morris*, 612 F.2d at 488–89. We agree: the district court's

action here thus violated both the defendant's statutory and constitutional rights.

**6.** In any case, Ullah and Gosho–Kim's purported "waiver" of the requirement of jury unanimity would be invalid even under the Eleventh Circuit's *Sanchez* exception. *Sanchez* merely allowed a defendant to waive that requirement "in exceptional circumstances". *Sanchez,* 782 F.2d at 934. *Sanchez* explicitly stated that "[b]efore allowing the defendant to waive the right, the following criteria should be met: (1) the waiver should be initiated by the defendant, not the judge or the prosecutor; (2) the jury must have had a reasonable time to deliberate and should have told the court only that it could not reach a decision, but not how it stood numerically, (3) the judge should carefully explain to the defendant the right to a unanimous verdict and the consequences of a waiver of that right; and (4) the judge should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily." *Id.*

Those requirements were not met in this case; indeed, *none* of those preconditions were met here. Moreover, the judge explicitly gave the defendants only "a split second" to consult with counsel and determine whether or not to waive their rights, made a point of "recommending" the solution he had proposed, and explicitly coerced at least one of the parties (the government) to withdraw its objection to his "recommendation". *See supra* at 510–11. Under such circumstances, Ullah and Gosho–Kim's purported waiver unquestionably would not be "knowingly and voluntarily made" and hence would be invalid.

Gosho–Kim did not waive their right to appeal the district court's erroneous decision to accept a nonunanimous jury verdict.

■ Ullah, unlike Gosho–Kim, did not raise the issue of the validity of the nonunanimous jury verdict in his opening brief: he raised it only in his reply brief. We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir.1986). Three main exceptions to that rule exist. First, we will review an issue not present in an opening brief for "good cause shown", Fed. R.App.P. 2, or "if a failure to do so would result in manifest injustice." *United States v. Loya*, 807 F.2d 1483, 1487 (9th Cir.1987). Second, "[w]e have discretion to review an issue not raised by appellant ... when it is raised in the appellee's brief." *In re Riverside Linden Investment Co.*, 945 F.2d 320, 324 (9th Cir.1991). Third, we may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party.

Each of these three exceptions is applicable here. First, it is "plain error" for a conviction to be based upon an nonunanimous verdict: reversal of such an error is "necessary to prevent a miscarriage of justice," *Bustillo*, 789 F.2d at 1367, and hence is required even if the error is not properly raised. In addition, it is "manifestly unjust" to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants. *See Olano*, 934 F.2d at 1439. We therefore would be required to reverse Ullah's conviction—even if he had not raised the issue in *any* of his written submissions—because Gosho–Kim is entitled to reversal on the same grounds. *See id.* (reversing conviction of a co-defendant on an issue he did not raise until oral argument). Second, the issue not raised in Ullah's opening brief was addressed both in his co-defendants' opening brief as well as in the appellee's brief: the discussion of the issue in those briefs is sufficient to permit an informed resolution of the dispute and its application to Ullah. We therefore would apply the *Riverside Linden* exception here. Finally, the government suffered no prejudice as a result of Ullah's failure to raise the issue in his opening brief. The government's consolidated brief responded to both Ullah and Gosho–Kim's claims and fully addressed the issue of the validity of nonunanimous verdict: Ullah's failure to raise the issue until his reply brief did not impair the government's position on appeal. For these reasons, despite the fact that Ullah's attorney did not properly raise the issue of the validity of the nonunanimous jury verdict in his opening brief, Ullah is entitled to a reversal of his conviction for the same reasons as Gosho–Kim.

Two jurors voted to acquit Ullah and Gosho–Kim: the defendant's convictions were not supported by the verdict of a unanimous jury. The verdict violated Rule 31 as well as the "firmly established" and "indispensable" requirements of our federal system. Accordingly, the convictions are reversed, and the case is remanded for proceedings consistent with this opinion.

REVERSED and REMANDED.